**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SERAPH CONSULTING, INC.,

Plaintiff,

v.

COMMERCIAL VEHICLE GROUP, INC.,

Defendant

Case No.: 2:25-cv-01560-APG-NJK

**Order Granting Defendant's Motion for Summary Judgment in Part and Granting Plaintiff's Motion for Summary Judgment in Part**

[ECF Nos. 12; 20]

Seraph Consulting, Inc. is a manufacturing consulting firm. Commercial Vehicle Group, Inc. (CVG) owns and operates facilities that manufacture car parts. In 2024, Seraph and CVG entered into a contract in which Seraph agreed to provide consulting services to a particular manufacturing facility and CVG agreed to pay a flat rate plus a performance-based bonus calculated as a percentage of the facility's increase in value based on certain data points. Three months into the contract, CVG sold the facility. The parties disagree on whether this sale triggered a provision in the contract mandating CVG to pay Seraph a $2,000,000 flat bonus instead of the data-derived value calculation. After Seraph invoiced CVG for the $2,000,000 (minus one payment already made) and CVG refused to pay, Seraph sued for breach of contract/fraud, breach of the implied warranty of good faith and fair dealing, and unjust enrichment. The parties have each moved for summary judgment on all four claims.[1]

The parties' central dispute is over the contract language regarding the $2,000,000 bonus. Seraph argues that the sale of the facility rendered the precise value improvement incalculable, as Seraph ceased to perform for CVG at that time. Seraph thus contends it is entitled to the

[1] I construe Seraph's claim for "breach of contract/fraud" as two separate claims, one for breach of contract and the other for fraud. ECF No. 1 at 5.

$2,000,000 bonus. CVG argues that the flat bonus provision was never triggered because it applies only if CVG is acquired by or merged with another entity, but no such merger or acquisition occurred. Next, CVG contends that the sale has not rendered unavailable the data necessary to calculate the value bonus. Finally, it argues that Seraph cannot sustain a breach of contract claim because Seraph failed to perform under the contract.

I grant CVG's motion for summary judgment on the unjust enrichment and fraud claims and grant Seraph's motion for summary judgment on the breach of contract claim. I therefore dismiss Seraph's claim for breach of the implied warranty of good faith and fair dealing as moot.

## I. Facts

CVG, a car parts manufacturer, owned and operated a manufacturing facility called the Kings Mountain Facility. ECF No. 14-1 at 2–3. It contracted with Seraph, a manufacturing consulting company, to help overcome the facility's production shortfalls. *Id.* at 3. On June 24, 2024, Seraph and CVG entered into a twelve-month consulting contract under which Seraph would provide consulting services to the Kings Mountain Facility. ECF No. 13-2 at 3, 14–22. The parties agreed to a "value creation" clause in which Seraph would discount its base rate by 30% in exchange for a 35% share of the increase in value it created for the Kings Mountain Facility according to a set of specified metrics. *Id.* at 10.

The contract also included the following two provisions relating to Seraph's bonus:

> [The purchaser assumption provision:] In the event that CVG is acquired by or merged with another entity, the acquiring or successor entity shall assume all obligations of CVG under this contract, including those of payment and provisioning of data to validate value bonus payments. CVG shall ensure that the acquiring or successor entity acknowledges and agrees to be bound by these obligations in writing, and CVG remains liable until such assumption is confirmed by [Seraph].

> [The flat bonus provision:] If, as a result of any change in ownership, the precise value improvement can no longer be calculated from the available data, all parties

> agree that the value bonus payment shall be set at $2,000,000 less any value payments already made at the time of ownership change.

*Id.* at 11.

Three months into the twelve-month contract, on October 1, 2024, CVG sold the Kings Mountain Facility to SVO, LLC, a Volvo affiliate (Volvo). ECF Nos. 20-3 at 5, 12, 15; 24-1 at 31. CVG "lost access to data once Volvo took over the facility." ECF No. 20-3 at 12. While Seraph had previously calculated and invoiced a September bonus using available data, it did not send CVG a data-derived invoice following the October sale. ECF Nos. 24-1 at 79, 84; 24-2 at 91. Seraph then entered into a different contract with Volvo to continue servicing the newly acquired Kings Mountain Facility, now for Volvo instead of CVG. ECF Nos. 20-2 at 19; 20-3 at 22.

Eight months later, Seraph invoiced CVG for $1,925,315.60, representing the $2,000,000 flat bonus minus the September data-derived bonus already paid in the amount of $74,684.40. ECF No. 24-12 at 2. CVG rejected that invoice, so Seraph filed this lawsuit. ECF Nos. 20 at 13; 23 at 8.

## II. Analysis

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440–41 (9th Cir. 2017).

A. <u>I grant CVG's motion for summary judgment in part.</u>

CVG moves for summary judgment on all four claims. I grant its motion on the claims for unjust enrichment and fraud. I deny its motion on the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

*i. Seraph's unjust enrichment claim fails because there is an enforceable contract.*

CVG argues that Seraph's unjust enrichment claim fails because there is a valid, enforceable contract. Seraph responds that it asserted unjust enrichment as an alternative theory in the event I find that no contract exists. ECF No. 14 at 17. But neither party disputes the existence of a valid contract, and they refer to the June 2024 agreement as "the contract." *See, e.g.*, ECF Nos. 24-1 at 16; 24-2 at 14, 18, 23. Because a valid contract existed, Seraph's remedy is in contract, not quasi-contract. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)[2] (stating that unjust enrichment and the doctrine of quasi-contract apply only "where there is no legal contract" because "no agreement can be

---

[2] CVG attributes language to *Nautilus Insurance Company v. Access Medical, LLC* without indicating that language was written in the dissent, not the majority opinion. ECF No. 12 at 9; 482 P.3d 683, 692 (Nev. 2021) (en banc) (Cadish, J., dissenting). Nevertheless, it is an accurate statement of Nevada law. *See Leasepartners Corp.*, 942 P.2d at 187 ("An action based on a theory of unjust enrichment is not available when there is an express, written contract.").

implied when there is an express agreement"). I therefore grant CVG's motion for summary judgment on Seraph's unjust enrichment claim.

*ii. Seraph's fraud claim fails because there is no evidence of fraud.*

Seraph alleges that during contract negotiations, CVG promised to pay the bonus to induce Seraph to reduce its rate by 30% with no intention to pay the bonus. ECF No. 1 at 5. In Seraph's motion for summary judgment, it argues that CVG agreed to the contract's value-based bonus provision with "no intention of remaining liable under these circumstances, despite . . . agreeing it would so remain. This was fraud from the outset." ECF No. 20 at 19. In CVG's motion for summary judgment and response to Seraph's motion, it argues that Seraph fails to show evidence of a false representation, knowledge of falsity, intent to induce reliance, justifiable reliance, or resulting damage. ECF Nos. 12 at 8; 23 at 20.

A party has "a separate duty, independent of that imposed by [contract], not to make false promises or fraudulently misrepresent its intention to perform." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). To prevail on a fraud claim, "a plaintiff must prove five elements by clear and convincing evidence: (1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021) (citing *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992)). "Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." *Bulbman*, 825 P.2d at 592.

Seraph's complaint alleges that CVG:

> made promises relating to the bonus payment in order to induce a 30% reduction in the initial fee, by promising to pay the bonus payment in lieu

> of the normal initial rates to be charged, and . . . did so with the intention to not pay the bonus payment, in a manner intentionally designed to induce reliance and a reduction of initial fee charges, i.e., inducing reliance through fraud.

ECF No. 1 at 5. Seraph identifies CVG's statement "indicating it would 'remain[] liable' if it sold the Facility" as the allegedly fraudulent statement. ECF No. 20 at 19. But it fails to produce evidence that this statement was fraudulent at the time it was made. While CVG was in "less formal discussions" with Volvo to sell the Kings Mountain Facility at the time it signed the contract, both CVG and Seraph knew of this possibility and the flat bonus provision expressly contemplated that occurrence. ECF No. 20-3 at 14. Thus, evidence that CVG intended to sell the Facility is not evidence that it intended to avoid performing under the contract.

In response to CVG's summary judgment motion, Seraph argues that dismissing the fraud claims would be premature because "'summary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim.'" ECF No. 14 at 16 (quoting *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984)). But a plaintiff "must offer more than conclusory allegations, and if the defendant presents affidavits or other evidence establishing a lack of scienter, the plaintiff must come forward with some affirmative showing." *Vucinich*, 739 F.2d at 1436.

Here, Seraph's Rule 30(b)(6) designee testified that CVG's counsel incorrectly believed that Volvo had assumed the contract. ECF No. 20-2 at 21. This testimony supports CVG's argument that "the assignment issue is a clerical mistake, not fraud." ECF No. 23 at 20. Seraph has not made an affirmative showing to the contrary, so summary judgment is proper.

At one point, Seraph's counsel even opines as much:

> At the time of these pre-litigation attempts by Seraph to get paid, CVG's in-house counsel . . . insisted that CVG was not responsible to pay this invoice because

> Volvo had assumed CVG's obligations under the subject Consulting Agreement[.] . . .
> It is perhaps likely, although this would be speculation, that the real reason the Consulting Agreement was not assumed by Volvo, to protect the benefit of Seraph's contract, is because CVG's in-house lawyer made this same error at the time of the sale, believing that the Consulting Agreement was listed on the schedule of assumed contracts (just as he later indicated he believed) because he had been misreading that schedule from the time it was prepared, presumably with his involvement.

ECF No. 20 at 13–14 (emphasis removed). Seraph has raised no genuine issue of material fact that, at the time of signing, CVG intended not to perform its duties under the contract.

Even viewing the facts in the light most favorable to Seraph on CVG's motion for summary judgment, Seraph has not presented a triable issue of fact on the fraud claim. I therefore grant CVG's summary judgment motion on Seraph's fraud claim contained within its first cause of action for breach of contract/fraud.

*iii. I deny summary judgment in CVG's favor on Seraph's contractual claims because its sale of the facility triggered the $2,000,000 flat bonus provision.*

"Under Nevada law, 'the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.'" *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006)); *see also Richardson v. Jones*, 1 Nev. 405, 408 (1865). "Failure to perform one's obligations within the express terms of an agreement constitutes a literal breach of contract." *Saini*, 434 F. Supp. 2d at 923.

I "interpret unambiguous contracts according to the plain language of their written terms." *Fed. Nat'l Mortg. Ass'n v. Westland Liberty Vill., LLC*, 515 P.3d 329, 334 (Nev. 2022) (en banc). I read the contract as a whole to avoid the negation of any term. *Id.* I give the

contract's language its "common or normal meaning . . . unless circumstances show that in a particular case a special meaning should be attached to it." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (quotation omitted), *cited favorably by Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 108 (Nev. 2015) (en banc). In interpreting a contract, I must endeavor to "effectuate the intent of the parties." *NGA #2 Liab. Co. v. Rains*, 946 P.2d 163, 167 (Nev. 1997) (quotation omitted).

The flat bonus provision states:

> If, as a result of any change in ownership, the precise value improvement can no longer be calculated from the available data, all parties agree that the value bonus payment shall be set at $2,000,000 less any value payments already made at the time of ownership change.

ECF No. 13-2 at 11. This provision immediately follows the purchaser assumption provision, which applies "[i]n the event that CVG is acquired by or merged with another entity." *Id.* CVG argues that the phrase "any change in ownership" in the flat bonus provision must be read in light of this earlier provision and limited by its terms to only mergers or acquisitions of CVG. Seraph argues that the two paragraphs address different scenarios that may impact the bonus calculation.

The two contract provisions do separate and distinct work. The purchaser assumption provision protects Seraph from losing the benefit of its bargain in the event CVG takes a new corporate form or ceases to exist. Its primary function is to ensure that in that event, either CVG or a successor entity remains liable on the contract.

The flat bonus provision serves a different purpose. It ensures that Seraph receives a reasonable estimate of its data-derived bonus if "any change in ownership" renders the data that is necessary for the bonus calculation to be unavailable. The contract estimated Seraph's likely

data-derived bonus at $2,092,037. ECF No. 20-1 at 13. So the flat bonus provision is a pre-negotiated proxy for that number in the event it cannot be calculated.

CVG argues that a broad interpretation of the phrase "any change in ownership" "could be read to include anything – a piece of equipment, a software, a product line – obligating CVG to pay Seraph $2,000,000.00." ECF No. 15 at 9 (emphasis removed). But the contract language is narrower. The flat bonus provision is only triggered by "any change in ownership" that causes "the precise value improvement" of the Kings Mountain Facility to "no longer be calcul[able] from the available data." ECF No. 13-2 at 11.

Further, limiting the flat bonus provision to mergers or acquisitions would fail to give effect to the parties' use of "any," which "is not limited to one being or thing." *Hui Ran Mu v. Barr*, 936 F.3d 929, 934 (9th Cir. 2019) (stating, in terms of statutory construction, that "[b]y its own terms, 'any' is not limited to one being or thing"); *Any*, Merriam Webster Online, http://www.merriam-webster.com/dictionary/any (last visited October 5, 2026) (defining "any" as "one, some, or all indiscriminately of whatever quantity"). The surrounding language enforces this reading because the flat bonus provision already restricts the operative category of "any change in ownership" to those that "result" in "the precise value improvement [] no longer be[ing] calcul[able] from the available data." ECF No. 13-2 at 11. I cannot impose additional limits on the flat bonus provision to which the parties never agreed.

This interpretation also avoids absurd results. It is a "generally accepted rule[] of construction" that "[a] contract should not be construed so as to lead to an absurd result." *Reno Club v. Young Inv. Co.*, 182 P.2d 1011, 1017 (Nev. 1947); *see also Nevada State Educ., Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 673 (Nev. 2021) (noting that "an interpretation is not reasonable if it . . . leads to an absurd result"). CVG does not explain why the parties would

have contracted for a $2,000,000 flat bonus for Seraph if CVG lost the data in two specific kinds of transactions (a merger or an acquisition), but no bonus if CVG lost the data in any other kind of transaction. The kind of transaction in which the data is lost makes no financial difference to Seraph, just the ability to calculate the data-derived bonus.

CVG's motion for summary judgment for the breach of contract claims rests solely on its argument that a merger or acquisition of CVG is a condition precedent to the flat bonus clause, and CVG's sale of the Kings Mountain Facility was merely an asset sale. ECF No. 12 at 7. CVG contends that "because it is undisputed that CVG was not merged with or acquired by another entity, there is no genuine dispute of material fact in Seraph's breach of contract claims." *Id.* at 8. But the trigger for the flat bonus was "any change in ownership," a broader category than mergers and acquisitions. And it is undisputed that a change in ownership of the Kings Mountain Facility has occurred. Therefore, if that change in ownership caused the data-derived bonus to be incalculable, the flat bonus provision will apply. I thus deny CVG's summary judgment motion on Seraph's breach of contract claim.

CVG's only argument for summary judgment on Seraph's breach of the covenant of good faith and fair dealing claim is that it "rests on this alleged breach that, as a matter of law, never occurred." ECF No. 12 at 7. Because I have rejected CVG's argument for summary judgment on the breach of contract claim, I reject this argument as well.

B. <u>I grant Seraph's motion for summary judgment in part and deny it in part.</u>

Seraph also moves for summary judgment on all four claims. I deny its motion on the unjust enrichment and fraud claims. I grant its motion on the breach of contract claim. I deny as moot its motion on the breach of the implied covenant of good faith and fair dealing claim.

*i. I deny Seraph's summary judgment motion on its unjust enrichment and fraud claims for the same reasons I granted CVG's motion on these claims.*

I granted summary judgment in CVG's favor on the unjust enrichment and fraud claims. I incorporate that analysis here and deny Seraph's motion for summary judgment on both claims.

*ii. I grant summary judgment in Seraph's favor on its breach of contract claim because the flat bonus provision was triggered.*

CVG argues that the flat bonus provision was not triggered by the sale of the facility; that the necessary data was not "unavailable" and therefore the data-derived bonus could be calculated; that even if the flat bonus provision was triggered, Seraph failed to perform under the contract and therefore cannot sustain a breach of contract action; and that even if the provision was triggered and Seraph performed, the bonus invoice was untimely. None of these arguments is successful.

As discussed above, CVG's sale of the Kings Mountain Facility qualified as "any change in ownership" sufficient to trigger the flat bonus provision. So if "as a result of" that sale, "the precise value improvement can no longer be calculated from the available data," the flat bonus provision triggers. ECF No. 13-2 at 11. In that case, CVG would be obligated to pay the $2,000,000 flat bonus so long as Seraph performed under the contract.

CVG argues that "the contract requires that a change in ownership make the precise value improvement impossible to calculate from available data. It does not convert the disappearance of the underlying chargeback activity into 'unavailable data.'" ECF No. 23 at 14. It cites to the deposition of Seraph's Rule 30(b)(6) designee, who testified that "the chargebacks didn't become unavailable data; they simply stopped existing at all." *Id.*; ECF No. 24-1 at 73. It also

argues that the necessary data did exist, and Seraph had "continuous, firsthand access" to it, "including cab production output, overtime, and quality charges from which the 'precise value improvement' could be calculated." ECF No. 23 at 6. Seraph contends that CVG draws a meaningless distinction between unavailable data and nonexistent data, as Seraph cannot access it to perform the calculation in either case.

The argument that the data is not unavailable because it has ceased to exist fails for two reasons. First, it draws a distinction without a difference. Data that does not exist is not available. Additionally, the word "unavailable" does not appear in the flat bonus provision. The flat bonus provision triggers when "the precise value improvement can no longer be calculated from the available data." ECF No. 13-2 at 11. So the relevant question is not whether some subset of the data is unavailable, but rather what data is available and whether that is sufficient to calculate the data-derived bonus. Under the contract, one of the data points used to calculate the bonus was the number of chargebacks Volvo made to CVG. ECF No. 24-2 at 43. CVG's assertion that the Volvo chargebacks ceased to exist is an assertion that they are unavailable, and CVG's Rule 30(b)(6) designee agreed that if the chargeback data is unavailable, then the bonus "analysis would be based on the default payment amount." ECF No. 24-2 at 43–45.

CVG's second argument, that Seraph possessed the data after the sale, fails because the Volvo chargebacks are a necessary baseline for calculating the data-derived bonus. ECF Nos. 24-2 at 31–32, 43, 61; 24-1 at 59–60. Because a necessary component of the bonus calculation no longer exists, CVG has not shown that Seraph possessed the data necessary to perform the calculation.

The parties agree that the Volvo chargeback data for the final nine months of the contract no longer exists as a result of CVG's sale of the Kings Mountain Facility. Therefore, "as a result

of any change in ownership, the precise value improvement can no longer be calculated from the available data." ECF No. 13-2 at 11. Consequently, if Seraph performed, CVG is liable for breaching the contract.

*iii. CVG has not presented evidence showing that Seraph failed to perform.*

CVG argues that even if it breached the contract, it should not be liable because Seraph breached by failing to perform. First, CVG argues that Seraph stopped performing for CVG after October 1, 2024, the date CVG sold the Kings Mountain Facility. Next, it argues that the performance baselines had not been established, so there existed "no basis to deem Seraph's performance established as a matter of law." ECF No. 23 at 16. It lastly argues that Seraph's performance for CVG during the first three months of the contract was unsatisfactory and constituted a breach. Seraph responds that its failure to perform during the final nine months of the contract was a result of CVG's sale of the Kings Mountain Facility and that performance baselines had already been established. It further argues that its performance during the first three months of the contract was satisfactory because the contract only required "commercially reasonable efforts," and in any case, CVG's documents do not show a failure to deliver what was promised. ECF No. 25 at 13.

CVG sold the Kings Mountain Facility to Volvo on October 1, 2024. ECF No. 24-1 at 31, 60. After that date, Seraph was no longer performing for CVG under this contract. *Id.* at 60. Rather, its continued service to the facility was under a subsequent contract with Volvo. *Id.* at 103. The contract between Seraph and CVG obligated Seraph to provide CVG with service to the Kings Mountain Facility for a period of twelve months. But CVG's sale made that impossible after October 1.

"[A]ny affirmative tender of performance is excused when performance has in effect been prevented by the other party to the contract." *Cladianos v. Friedhoff*, 240 P.2d 208, 210 (Nev. 1952). "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Id.* (quotation omitted). CVG's sale of the Kings Mountain Facility prevented Seraph from performing the contract after October 1, so Seraph's performance after that date is excused. *See also E.I. Du Pont de Nemours Powder Co. v. Schlottman*, 218 F. 353, 355 (2d Cir. 1914) ("If the plaintiff could now perform . . . , he might be obliged to do so as a condition of recovering the contract price. But the defendant has made performance impossible by selling the plant within the [contract] period of one year[.]").

Next, CVG argues that "Seraph cannot demand summary judgment on a bonus whose measuring system it never completed." ECF No. 23 at 16. But CVG's Rule 30(b)(6) designee testified that the baselines were established and identified the specific baseline values of CH, LR, and MR cab production and Volvo chargebacks which CVG hired Seraph to improve upon.[3] ECF No. 24-2 at 30–34, 47, 60–61, 63. He was involved in establishing these four baselines, noting that they were based upon "historical data of the plant's performance." *Id.* at 26–27. These four factors established the basis for the data-derived bonus. ECF No. 13-2 at 10.

CVG's argument conflates performance targets with baselines. For example, it points to its Rule 30(b)(6) witness's testimony that, while the agreed-upon goal was to reduce Volvo chargebacks, no target "number was established." ECF No. 24-2 at 61. But the target is not the baseline. That same witness referred to "the baseline" of Volvo chargebacks as "[$]74,000 on a

[3] He testified that these baselines were: 80 CH cabs per day, eight LR cabs per day, six LR cabs per day, and a monthly Volvo chargeback of $74,046.67, representing "the average monthly chargeback that [CVG was] receiving from Volvo." ECF No. 24-2 at 32, 47, 60–61.

monthly basis." *Id.* The same is true of CVG's claim that the "data-collection system (Production[.]Net) was 'still being calibrated' as of July 3." ECF No. 23 at 16. CVG never explains the significance of Production.Net, nor does it point to evidence that its development was relevant to the four baselines. To the contrary, CVG's own designee testified that the necessary baselines were established and he personally contributed to establishing them.

Finally, CVG argues that Seraph's performance during the first three months (a period during which Seraph undisputedly owed performance to CVG) was unsatisfactory to the point of constituting a material breach. But CVG's Rule 30(b)(6) designee testified that Seraph's performance was not so poor that Seraph was in material breach of its duties under the contract.[4] ECF No. 24-2 at 57.

Despite this testimony, CVG contends that the maintenance audit "recorded critical-asset/BOM definition, preventive-maintenance updates, critical-spares definition, and MRO-process work at 0% completion as of September 27, 2024." ECF No. 23 at 16. It refers to these as "critical deliverables," but it never defines any of these terms, nor does it point to anything in the record establishing their significance. *Id.* It notes that CH production failed to meet the established targets, and "MR and SB [also undefined] did not run." *Id.* at 16–17. Further, it points to the fact that Seraph lagged behind projections. But CVG never explains why failing to meet projections constitutes a material breach under the contract's terms. It likewise does not explain why Seraph's alleged failure to improve production to target levels constitutes a material breach. The contract states that "Seraph will use commercially reasonable efforts to obtain the desired results from this engagement." ECF No. 20-1 at 12. CVG identifies no promises of

[4] He noted some initial concerns with Seraph's performance, which improved once Seraph replaced its maintenance lead. *Id.* at 56–57.

tangible production numbers in the contract. Nor does it argue that Seraph failed to use commercially reasonable efforts.

Thus, the only evidence bearing directly on Seraph's performance during the initial three-month period is the statement of CVG's Rule 30(b)(6) designee that Seraph was not "in material breach of [its] duty under this contract." ECF No. 24-2 at 57. A reasonable jury could not find from this evidence that Seraph was in material breach.

Finally, CVG argues that Seraph's bonus invoice was untimely. ECF No. 23 at 17–19. It argues that the parties contracted for quarterly payment invoices, regardless of the methodology used to calculate the bonus. *Id.* at 18. CVG contends that Seraph's May 2025 invoice failed to adhere to that payment schedule, "bearing no relationship to the quarterly structure for which the parties bargained." *Id.* at 19; ECF No. 24-12 at 2. Seraph replies that "[n]o provision of the Consulting Agreement makes the invoicing schedule a condition of the bonus, or indicate[s] the bonus right would otherwise be forfeited." ECF No. 25 at 17.

CVG argues that the invoice "cannot establish conditions precedent," but it does not argue that adherence to the payment schedule is itself a condition precedent to payment. ECF No. 23 at 19. Further, it identifies no harm or prejudice resulting from Seraph's failure to adhere to the payment schedule.[5] And even if there was evidence of harm, it does not advance any theory of why that harm would excuse its performance. Even viewed in the light most favorable to CVG, the record fails to support its conclusion that "Seraph's failure to follow the invoicing schedule creates a genuine dispute over whether it can demand $1,925,315.60 in a single

---

[5] Even if Seraph's failure to conform to the payment schedule constituted a breach from which CVG suffered harm, CVG could have counterclaimed for those damages and failed to do so.

untimely invoice bearing no relationship to the quarterly structure for which the parties bargained." *Id.* at 19.

The flat bonus provision was triggered and Seraph did not materially breach the contract. I therefore grant Seraph's motion for summary judgment on its breach of contract claim. Seraph is entitled to a sum of $1,925,315.60, representing the $2,000,000 flat bonus less $74,684.40 (the amount CVG previously paid), plus prejudgment interest.[6] Nevada Revised Statutes (NRS) § 99.040(1)(a). Because Seraph has prevailed only on its breach of contract claim, it is not entitled to punitive damages. NRS § 42.005(a) (authorizing punitive damages "in an action for the breach of an obligation not arising from contract").

By November 16, 2026, Seraph must provide CVG its calculation of the prejudgment interest due from June 19, 2025 (the date the payment became due) to that date, plus a per diem amount thereafter. ECF Nos. 20-1 at 10 ("Seraph will charge a monthly interest rate of 1.9% for any balance over 30 days."); 24-12 at 2 (the flat invoice came due on June 19, 2025); *Kerala Props., Inc. v. Familian*, 137 P.3d 1146, 1149 (Nev. 2006) (prejudgment interest is calculated "from the date when those obligations came due"). By November 23, 2026, the parties will submit either a stipulation as to the amount of prejudgment interest and per diem or a joint report of each side's calculation of that amount.

C. <u>I deny as moot Seraph's claim for breach of the implied covenant of good faith and fair dealing</u>.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 555 (Nev.

---

[6] Seraph requested prejudgment interest in its motion. ECF No. 20 at 23. CVG did not respond to that argument. CVG therefore concedes the issue. LR 7-2(d).

1995) (quoting Restatement (Second) of Contracts § 205 (1981)). But a plaintiff generally may not recover for breach of both a contract and an implied covenant of good faith and fair dealing on the same facts. *See, e.g.*, *Nevada Corp. Headquarters, Inc. v. Sellers Playbook, Inc.*, No. 2:18-cv-1842-JCM-EJY, 2020 WL 5731801, at *5 (D. Nev. July 6, 2020); *Unterreiner v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-cv-01994-GMN-CWH, 2015 WL 419849, at *2 (D. Nev. Jan. 29, 2015).

Seraph's implied covenant of good faith and fair dealing claim is based on the same facts as the contract claim and seeks the same damages. Accordingly, it pleaded this claim in the alternative. ECF No. 25 at 18. Because I grant Seraph's motion for summary judgment on the breach of contract claim, I dismiss this alternative claim as moot.

## III. Conclusion

I THEREFORE ORDER that Commercial Vehicle Group, Inc.'s motion for summary judgment **(ECF No. 12) is GRANTED in part**, on the claims of fraud and unjust enrichment.

I FURTHER ORDER that Seraph's motion for summary judgment **(ECF No. 20) is GRANTED in part**, on the claim of breach of contract. Seraph's claim for breach of the implied covenant is dismissed as moot.

I FURTHER ORDER that, by November 16, 2026, Seraph must provide CVG its calculation of the prejudgment interest due from June 19, 2025 to that date, plus a per diem amount thereafter. By November 23, 2026, the parties will submit either a stipulation as to the amount of prejudgment interest and per diem or a joint report of each side's calculation of that amount.

DATED this 2nd day of November, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE